**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

SHERRI LYNN BARROS,

              Plaintiff,

                                                      Case No. 8:15-cv-834-T-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

              Defendant.
_____/

**OPINION AND ORDER**[1]

**I. Status**

Sherri Lynn Barros ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of permanent nerve damage, anxiety, depression, attention deficit disorder, and back and neck pain. See Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed July 24, 2015, at 214. Plaintiff filed applications for DIB and SSI on May 24, 2011, alleging in both an onset date of February 1, 2010. Tr. at 170-72 (DIB); Tr. at 178-83 (SSI). Plaintiff's applications were denied initially, Tr. at 91-93 (DIB); Tr. at 97-99 (SSI), and were denied upon reconsideration, Tr. at 106-07 (DIB); Tr. at 112-13 (SSI).

At a hearing on June 13, 2013, an Administrative Law Judge ("ALJ") heard testimony from a vocational expert ("VE") and from Plaintiff, who was represented by a paralegal. Tr.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed July 27, 2015; Reference Order (Doc. No. 15), entered July 28, 2015.

at 24-42; see Tr. at 89-90 (representative appointment and fee agreements indicating Plaintiff's representative was a non-attorney employed by the law firm of Morgan & Morgan, P.A.). On July 5, 2013, the ALJ issued a Decision finding Plaintiff not disabled "from February 1, 2010, through the date of th[e D]ecision," and denying Plaintiff's claim. Tr. at 17; see Tr. at 10-18. Plaintiff then requested review by the Appeals Council, Tr. at 6, and submitted evidence to the Council in the form of a brief authored by her non-attorney representative, Tr. at 4; see Tr. at 251-52 (brief). On January 31, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3. On April 6, 2015, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff mainly raises two arguments on appeal: (1) that "the ALJ did not have good cause for rejecting the opinion of [Plaintiff's] pain management specialist, Dr. Susanti Chowdhury"; and (2) that "the three jobs that the ALJ identified at Step Five of the sequential evaluation process do not exist in 'significant numbers' in the national economy." Plaintiff Sherri Barros's Memorandum of Law (Doc. No. 19; "Pl.'s Mem."), filed September 15, 2015, at 1; see id. 14-23. Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") on November, 24, 2015. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons discussed below.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 12-17. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 1, 2010, the alleged onset date." Tr. at 12 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: back disorders, occipital neuralgia, and asthma." Tr. at 12 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 14 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

> [Plaintiff can] perform sedentary work . . . except she can sit and stand for 30 minutes at a time without leaving the work station. She can occasionally climb ramps and stairs, but never ladders or scaffolds. She can occasionally balance, stoop, kneel, and crouch. She can never crawl. She can never be exposed to unprotected heights or moving mechanical parts. She can occasionally operate a motor vehicle. She can occasionally be exposed to dust, odors, fumes, and pulmonary irritants.

Tr. at 14 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a swimming pool servicer. Tr. at 16 (emphasis and citation omitted). At step five, the ALJ considered Plaintiff's age (thirty-nine (39) years old on the alleged onset date), education ("at least a high school education"), work experience, and RFC, and the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 16 (emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified as representative jobs an "order clerk," a "document preparer," and a "table worker." Tr. at 17 (citations omitted). The ALJ concluded that Plaintiff "has not been not under a disability . . . from February 1, 2010, through the date of th[e D]ecision." Tr. at 17 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S.

389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The two issues Plaintiff raises are addressed in turn below.

### A. The Weight Assigned to Dr. Chowdury's Treating Medical Opinion

The Regulations establish a "hierarchy" among medical opinions[3] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other

---

[3] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

-5-

medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[4] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen,

---

[4] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

Plaintiff argues that the ALJ erred by "rejecting the opinion of [her] pain management specialist, Dr. Susanti Chowdhury." Pl.'s Mem. at 14-18. Dr. Chowdhury treated Plaintiff at least from October 2010 to April 2013. See Tr. at 292-305 (Ex. 5F, October 21, 2010 to June 2, 2011); Tr. at 311-13 (Ex. 7F, June 30, 2011 to July 28, 2011); Tr. at 342-46 (Ex. 15F, November 1, 2012); Tr. at 347-59 (Ex. 16F, November 29, 2012 to April 11, 2013). On June 6, 2013 Dr. Chowdhury completed a Medical Source Statement, opining among other things that Plaintiff can stand or walk for no more than two hours a day, can sit for no more than three hours a day, can never kneel or squat, and requires four unscheduled breaks a day. Tr. at 364-65.

In the Decision, the ALJ assigned only "limited weight" to Dr. Chowdhury's opinion because the ALJ found it inconsistent with Dr. Chowdhury's own treatment notes. Tr. at 15-16 (citing Exs. 5F, 7F, 15F, 16F (treatment notes)). Specifically, the ALJ observed in the treatment notes that Dr. Chowdhury "engaged in conservative treatment methods"; that she "note[d] full strength and muscle tone in all extremities"; that she "consistently describe[d] [Plaintiff's] gait as 'smooth' and 'symmetrical'"; and that she "ma[de] no remarks . . . indicating disabling work-related limitations." Tr. at 16 (citation omitted).

Plaintiff argues Dr. Chowdhury's opinion does not conflict with her treatment notes. Pl.'s Mem. at 15-18. She argues, for instance, her muscle strength and smooth, symmetrical gait do not mean she is capable of prolonged walking, sitting, or standing. As support, Plaintiff points to Dr. Chowdhury's notes showing that "on virtually every visit[, her] pain was worse with prolonged standing or walking." Id. at 15 (citing Tr. at 294, 296-99, 311-12, 348-57). Plaintiff also asserts that other physicians in the record, Paul J. Zak, M.D. and Robert

Martinez, M.D., "both noted that straight-leg tests were positive for leg pain." Id. (citing Tr. at 275, 287-88). Regarding her conservative treatment, Plaintiff contends that pain medications were the most aggressive treatment available to her, first, because the source of her pain (soft tissue injury) precluded surgery, id. at 16 (citing Tr. at 273), and second, because she suffered an "adverse reaction to the first injection treatment that she received," id. (citing Tr. at 301, 304, 343). As to the absence of work-related limitations specified in the treatment notes, Plaintiff argues "there was no need for the doctor to impose any work restrictions" because Plaintiff was not working. Id. at 17.

Additionally, Plaintiff contends that the ALJ erred by assigning less weight to Dr. Chowdhury's opinion than to the opinion of state agency non-examining medical consultant Edmund Molis, M.D. Id. at 17-18. Dr. Molis's assessment occurred on September 13, 2011, and he opined among other things that Plaintiff can stand, walk, or sit for six hours a day. See Tr. at 82-84. The ALJ found the opinion "most consistent with the record as a whole" and gave it "considerable weight." Tr. at 16. Plaintiff argues that because Dr. Molis assessed Plaintiff's records in 2011, the assessment did not take into account Dr. Chowdhury's recent treatment notes or Plaintiff's 2012 slip-and-fall injury that, Plaintiff alleges, "significantly aggravated her back pain and other problems." Id. at 17-18.

Defendant argues that the ALJ did not err in assigning little weight to Dr. Chowdhury's opinion because the ALJ gave adequate reasons and the finding is supported by substantial evidence in the record. Def.'s Mem. at 7-14. According to Defendant, Dr. Chowdhury's opinion is not only inconsistent with her treatment notes in the ways addressed by the ALJ, but it is "also inconsistent with other normal examination findings including that Plaintiff was in no acute distress, had a negative straight leg raise, and had full range of motion in her lumbar and cervical spine." Id. at 8 (citing 292-94, 296-99, 301-02, 305, 311-12, 346, 349,

352-53, 355-59 (Dr. Chowdhury's treatment records)). Defendant contends that Dr. Chowdhury's notes indicating Plaintiff's pain worsened with prolonged standing or walking were based only on Plaintiff's subjective complaints, not objective findings. Id. at 10. On top of the inconsistencies between Dr. Chowdhury's opinion and objective findings, Defendant observes, Dr. Chowdhury made no remark in the treatment notes indicating Plaintiff should avoid any activities or is limited in her ability to engage in any work or activity. Id. at 12-13 (citing 292-305, 311-13, 342-59).

Regarding Plaintiff's conservative treatment, Defendant points to Dr. Chowdhury's records suggesting that pain medications were improving Plaintiff's condition and reducing her pain. Id. at 9, 12 (citing Tr. at 294, 298-99, 311, 344-45, 351, 359) (other citations omitted). As Defendant observes, Dr. Chowdhury's notes suggest that lumbar injections were unnecessary due to the effectiveness of the medication treatment. Id. at 12 (citing Tr. at 359). But the records indicate, Defendant argues, that injections remain available as a more aggressive treatment for Plaintiff, despite that she fainted the one time Dr. Chowdhury administered an injection. Id. at 11-12. Defendant points out that Dr. Chowdhury told Plaintiff that fainting was common, that it may have resulted from an empty stomach and likely would not recur, and that Plaintiff could take anxiety medication to calm her before the injection. Id. (citing Tr. at 299, 301, 302).

Upon review, the undersigned finds the ALJ did not err with respect to Dr. Chowdhury's opinion. By noting conflicting evidence in the doctor's own treatment notes, the ALJ provided adequate reasons for giving the treating opinion limited weight. See Tr. at 15-16. Those reasons are supported by substantial evidence in the record, including Dr. Chowdhury's objective findings and observations that Plaintiff has a normal gait and full strength. See Tr. at 292-94, 296-99, 301-02, 305, 311-12, 346, 349, 352-53, 355-59. The

ALJ correctly recognized that Plaintiff's treatment was conservative. See Tr. at 16. Plaintiff was being treated with pain medications, and the records indicate these have helped reduce Plaintiff's pain and allowed her to participate in daily living activities. See Tr. at 294, 298, 299, 311, 344-45, 351, 359. It is notable, furthermore, that even though the lumbar injection provided further relief, Plaintiff opted not to continue with the injection treatment, over Dr. Chowdhury's recommendation that she do so. See Tr. at 299, 301, 302, 305. As the ALJ appropriately assessed Dr. Chowdhury's opinion, the ALJ also did not err by assigning more weight to Dr. Molis's non-examining opinion on the basis that it was more consistent with the record as a whole. See Tr. at 16; see also Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted) (determining that an ALJ was justified in relying on a non-examining physician's opinion that was consistent with the evidence, while rejecting a treating physician's opinion that was contrary to the evidence). Accordingly, the undersigned finds the ALJ's Decision is due to be affirmed on this issue.

**B. The Step-Five Finding**

Plaintiff disputes the ALJ's step-five finding that she is not disabled because she can perform other jobs in the national economy that exist in significant numbers. See Pl.'s Mem. at 18-23; Tr. at 17 (ALJ's Decision). Specifically, Plaintiff contends that "the three jobs that the ALJ identified at Step Five of the sequential evaluation process do not exist in 'significant numbers' in the national economy." Pl.'s Mem. at 1; see id. at 18-23.

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform." Phillips, 357 F.3d at 1239 (11th Cir. 2004). In this determination, "the 'appropriate focus under the regulation is the national economy,' not the local economy in which the claimant lives." Atha v. Comm'r, Soc. Sec. Admin., 616 F. App'x 931, 934 (11th Cir. 2015)

(quoting Allen v. Bowen, 816 F.2d 600, 603 (11th Cir. 1987)).  Indeed, it does not matter "whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 1382c(a)(3)(B).

There is, moreover, no bright line rule as to what constitutes a "significant number" of positions in this context, and the United States Court of Appeals for the Eleventh Circuit recently acknowledged that it "has never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations."  Atha, 616 F. App'x at 934.  In Atha, the court upheld the ALJ's determination that 440 jobs in Alabama and 23,800 jobs nationally constituted a significant number.  616 F. App'x at 935.

To make this step-five finding, "the ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).  The VE's testimony may constitute substantial evidence.  See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

Here, the ALJ relied on the VE's testimony to conclude that Plaintiff is not disabled because she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Tr. at 17.  Those occupations and their respective numbers are as follows: order clerk (120 jobs in Florida and 3,000 nationally); document preparer (80 jobs in Florida and 2,700 nationally); and table worker (100 jobs in Florida and 2,500 nationally).  Tr. at 17 (ALJ's Decision); Tr. at 39-40 (VE's hearing testimony).  The ALJ acknowledged these are "representative occupations."  Tr. at 17; see Tr. at 39-40 (VE testifying these are "examples" of jobs that can be performed with the

limitations stated by the ALJ). Based on the ALJ's finding, the jobs Plaintiff can perform number at least 300 in Florida (120+80+100) and 8,200 nationally (3,000+2,700+2,500).

In arguing that the jobs listed by the ALJ do not exist in "significant" numbers, Plaintiff focuses on the number of positions in each occupation rather than the total number for all three. Pl.'s Mem. at 18. She contends, for instance, that the 3,000 order clerk jobs nationally "is just a fraction of the 80,000 national positions that were held to be significant" by the Eleventh Circuit in Allen v. Bowen, 816 F.2d 600, 601-02 (11th Cir. 1987). Pl.'s Mem. at 20. Plaintiff also focuses on the practical import of the ALJ's finding, asserting that "a common-sense analysis suggests that [she] would not be able to find employment" in these positions because, according to Plaintiff, so few of these "specialized" jobs exist and she "cannot commute a long distance." Id. at 21-22. Furthermore, Plaintiff contends that given the low number, "the ALJ should have conducted a more detailed assessment of whether [Plaintiff] can adjust to the three jobs." Id. at 21.

Upon review, the undersigned finds the ALJ did not err in determining Plaintiff can perform jobs that exist in significant numbers in the national economy. First, substantial evidence supports the ALJ's finding that Plaintiff can perform the three jobs; the ALJ relied on the VE's testimony based on the ALJ's determination of Plaintiff's limitations, see Tr. at 39-40, which is also supported by substantial evidence. Second, substantial evidence also supports the finding that these jobs exist in significant numbers in the national economy. As Defendant points out, the proper question is whether the total number for all three jobs is significant. See Def.'s Mem. at 17 (citing 20 C.F.R. §§ 404.1566(b), 416.966(b)); see also Atha, 616 F. App'x at 935. Although the total number here, 8,200 nationally, may be less than the number affirmed as significant in many other cases, the difference is by no means as great as Plaintiff suggests, see, e.g., Johnson v. Chater, 108 F.3d 178, 180 (8th Cir.1997)

(noting 200 jobs in the state of Iowa and 10,000 in national economy was a significant number)—nor does it follow from these other cases that the number here is insignificant. The significance of the number, furthermore, does not depend on whether Plaintiff is actually able to be hired or make the commute. See 42 U.S.C. § 1382c(a)(3)(B); Atha, 616 F. App'x at 934 (citing 20 C.F.R. § 416.966(c)).  Overall, after due consideration, the undersigned finds the Decision is due to be affirmed on this issue.

### V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to § 1383(c)(3) and sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on August 25, 2016.

*/s/ James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record